**GHR ENERGY CORP., et al.**

v.

**CARBOLINE COMPANY, et al.**

No. 87–1165.

United States District Court,
E.D. Louisiana.

Sept. 7, 1990.

See also: 744 F.Supp. 1405.

## ORDER AND REASONS

MENTZ, District Judge.

Before the Court is the motion of defendants, United States Fire Insurance Company ("U.S. Fire") and International Insurance Company ("International"), for summary judgment. The Court had taken this matter under submission by an Order which was entered April 9, 1990. After reviewing the motion, memoranda of counsel, the record and the law, the Court hereby denies the motion for the reasons set forth below.

## FACTS

This motion arises as a consequence of the settlement entered into between the plaintiff, TransAmerican Refinery Corporation ("TRC"),[1] the defendants, Sun Company ("Sun") and Carboline Company ("Carboline"), and some of their respective insurers at various coverage levels, collectively the "settling defendants." After considerable discovery was conducted in this matter, the settling defendants and the plain-

---

1. TRC is the successor in interest to the GHR Energy Corporation and has been substituted as plaintiff in this matter.

tiff executed a settlement of all claims between them in mid-December of 1989. The insureds, Carboline and Sun, along with the settling insurers, were totally and completely released. However, there were several defendants, insurers at various coverage levels, that did not join in the settlement. The movers in the instant matter are two of the excess insurers who were among the "non-settling defendants."

## ANALYSIS

The issue presented to the Court in this motion is whether the settlement and complete release of a tortfeasor would release that tortfeasor's insurer or excess insurer. Despite the well-briefed positions, the question is not easily resolved. The case law on the subject is somewhat confusing, as is illustrated by the fact that both sides to this motion cite many of the same cases to support their respective positions. In the final analysis, however, the Court believes that the result reached must center on the intentions of the parties to the Settlement Agreement, as well as on its effects.

Section 18 of the Settlement Agreement sets forth the law governing this transaction:

> This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana in all respects, including matters of construction, validity, enforcement and interpretation.

In construing the intentions of the parties to this transaction, we are guided by Louisiana Civil Code article 3073, which speaks directly to the intentions of parties and the effects of settlement agreements:

> Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
>
> The renunciation, which is made therein to all rights, claims and pretensions,

extends only to what relates to the differences on which the transaction arises. La.Civ.Code Ann. art. 3073 (West 1952 & Supp.1990).

The movers argue that because Carboline and Sun have been completely exonerated as a result of the Settlement Agreement, Carboline and Sun are no longer liable to the plaintiffs. Since they are no longer potentially liable, they cannot become "legally obligated" to pay plaintiffs as a result of that liability. The insuring agreements used by U.S. Fire and International in both their policies require payment by the insurance companies on behalf of the insured the loss which the insured may sustain by reason of its liability. U.S. Fire and International argue that since the Settlement Agreement extinguishes all liability of Sun and Carboline, their obligation to indemnify their insureds is also extinguished; therefore, regardless of the wording of the Settlement Agreement, the plaintiff cannot have reserved rights to proceed against them.

Courts generally have required that in order for there to be a valid reservation of rights against a non-settling insurer, the issue of the insured's liability must remain unsettled and viable for the amount of insurance provided in the insurance policy of the non-settling insurer. *See Futch v. Fidelity & Casualty Company*, 246 La. 688, 166 So.2d 274 (La.1964). In *Futch*, the tortfeasor was driving an automobile owned by another person. Allstate Insurance Company had the primary coverage on the vehicle. Fidelity & Casualty Company was the insurer on the defendant driver's own vehicle and, under the clause relating to operation of non-owned automobiles, was excess to the Allstate policy. Allstate settled with the plaintiff for an amount within its policy limits. The plaintiff released Allstate and its insured completely, but reserved rights against F & C in its capacity of excess insurer. F & C brought a motion for summary judgment claiming that by operation of the settlement it was also released.

The Louisiana Supreme Court stated that before the effect of extinguishment and

release is determined, the first step is to decide whether the settlement between plaintiff, the primary insurer, and the tortfeasor produced the legal effect of wholly releasing and remitting the latter's obligation to plaintiffs for all consequences of the tortfeasor's negligence. *Id.* at 166 So.2d 277. Because the plaintiffs had reserved their rights in the release to proceed against F & C, the court found that it was not the intention of the plaintiffs to release an obligation which could not and did not accrue under the policy of insurance issued by Allstate. *Id.* (citing *Futch v. Fidelity & Casualty Company*, 136 So.2d 724, 729 (La.App. 2nd Cir.1961)). The court, agreeing with the court of appeals below, found that "the settlements were intended to relate only to the release of Allstate as primary insurer in consideration of the sums paid by it to plaintiffs and did neither pertain to F & C's unaccrued excess coverage under its policy, nor to [the tortfeasor's] liability for damages in excess of the amount of Allstate's primary liability." *Id.*[2]

Since the "renunciation ... extends only to what relates to the differences on which the transaction arises," the court concluded that:

> [T]he only differences between plaintiffs and Allstate at the time of the compromises related to the latter's primary liability to plaintiffs for the negligence of its insured.... and anything beyond those differences was without legal effect.

*Id.* (citing La.Civ.Code art. 3073). In other words, the settlement executed by the plaintiffs, Allstate, and Allstate's insured pertained *only to the tortfeasor's liability up to and including the limits of Allstate's primary policy.* Under this analysis, Allstate would not have been legally able to compromise and settle the portion of the tortfeasor's negligence *beyond its own coverage.* Hence, F & C's portion of

the tortfeasor's liability had not been compromised.

■■■ The movers in the present motion would have this Court put the proverbial cart before the horse. They quote the following language from *Futch:*

> It, of course, cannot be gainsaid that, if the legal obligation of F & C's insured to plaintiffs has been wholly extinguished by remission or release, F & C is not liable under its policy for its contract is to pay on behalf of its insured only when its insured is legally liable for damages.

*Id.* The movers go on to say that since Carboline and Sun have been completely released as a result of the Settlement Agreement, and therefore are no longer liable, the movers must also be released because their obligation to indemnify is contingent upon the liability of their insureds. *See Bergeron v. Gifford–Hill & Co.*, 137 So.2d 63 (La.App. 3rd Cir.1962). However, this point has been overruled by *Futch*, which found that absent a clear intent to release a non-settling insurer, a settlement between the plaintiff, the tortfeasor, and some of the tortfeasor's insurers leaves viable those claims of the plaintiff against the non-settling insurers. *Wirick v. Wyble*, 300 So.2d 571, 573 (La.App. 3rd Cir.1974).

The movers in the present motion have misinterpreted the *Futch* analysis. A release of the tortfeasor does not eliminate the insurer's *responsibility* for the tortfeasor's liability. Before the effect of the alleged extinguishment by release is determined the first step, as noted in *Futch* above, is to decide whether the settlement between TRC, the settling insurers, and Carboline and Sun produced the legal effect of wholly releasing and remitting Carboline's and Sun's obligations to plaintiffs for all consequences of their alleged negligence. The focus of this decision, therefore, is on ascertaining the intent of the

---

**2.** Under the settlement agreement in *Futch*, as in the present case, the tortfeasor had been "completely" released. It is important to remember, however, that technically the tortfeasor's liability beyond that which was settled has not actually been compromised because it

has not yet accrued. By releasing the tortfeasor for liability beyond the limits of the primary policy, the plaintiff is in fact only waiving its claim for the excess liability against the tortfeasor, while preserving its claim for that same liability against the excess insurer.

parties to the Settlement Agreement. And, under art. 3073, those intentions necessarily relate to the differences *between the parties to the Settlement Agreement itself* and the release extends, generally speaking, only to what relates to *those differences.*

The intent of the parties is, of course, reflected in the wording of their settlement agreement, and the most telling indication in this regard is a *reservation* by the plaintiff to proceed against non-settling parties. *See Futch,* 166 So.2d at 277. The presence of a reservation, therefore, is an indication that the parties intended to compromise and release only that portion of the tortfeasor's liability which is subject to coverage by the settling insurer. In *Futch,* the court found that the parties intended to release the primary insurer from any further responsibility for the tortfeasor's liability up to the limits of its coverage. The fact that the plaintiff also released the tortfeasor completely was of no consequence, because of the plaintiff's outstanding and separate claim against F & C for the excess portion of the tortfeasor's liability not made a part of the settlement agreement.[3]

Admittedly, this analysis creates a conceptual problem because the tortfeasor is released from liability for the excess portion, but his excess insurer is not. In *Futch,* the excess insurer argued that this situation amounted to improper claim-splitting. However, the court ruled that such a settlement does not split the cause of action because the insurers are severally liable and their obligations are conjunctive. *Id.* at 166 So.2d 278.[4]

Applying this analysis to the present motion, the Court finds that TRC intended to release only those defendants who were parties to the Settlement Agreement. Specifically, in Section 9 of the Settlement Agreement TRC *reserved* any and all rights against each of the non-settling defendants, naming them by name. Therefore, that portion of Sun's and/or Carboline's liability which is insured by U.S. Fire and International has not been released as to them simply because Sun and Carboline have been released. The renunciation by TRC of any and all claims, demands, etc. extends only to the differences between the settling defendants and TRC, and anything beyond those differences, particularly with respect to the non-settling defendants, is without legal effect. Essentially, as long as it can be determined in a settlement agreement, such as the one in the present case, that the plaintiff intended to reserve its rights against the non-settling defendants, each non-settling defendant insurer will still be responsible for its insured's liability at the contracted coverage level regardless of whether the plaintiff releases the insured.

The Court also notes that the decision reached in this opinion is in conformity with the general policy of promoting settlement. *See* Fed.R.Civ.P. 16(a); Local Rule 8.01E, Uniform Local Rules for the Eastern District of Louisiana. *See generally* D.M. Provine, *Settlement Strategies for the Federal District Judges* (Federal Judicial Center 1986). Were the Court to rule in

---

**3.** *See supra* note 1 and accompanying text. A well known insurance treatise states that

> A release given by the plaintiff upon settlement with primary liability insurer, without prejudice to the rights against an excess insurer, was held not to preclude further recovery against the excess insurer· even though the release stated it released claims against the insureds.

7C Appleman, *Insurance Law and Practice* § 4714 at pp. 536–37 & n. 45. The treatise also states with respect to Louisiana law that

> [A] settlement by one of two insurers of the insured defendant does not necessarily release the obligation of the other ... [v]ictims who settled with the released primary liability

insurer could pursue excess insurer without showing exhaustion of limits of primary insurer's policy. This was held to be true although the release recited that it released victim's claims against the insured.

*Id.* at pp. 547–48, nn. 3 & 6 (citing *Futch v. Fidelity & Casualty Co.,* 246 La. 688, 166 So.2d 274 (La.1964)).

**4.** Liability should, therefore, be viewed as a "snapshot" taken at the time of the act or omission which gives rise to the cause of action. The tortfeasor and his primary insurer are potentially liable; however, the excess insurer's liability is contingent and conjunctive as well as potential.

**1412**

the instant case that non-settling defendant insurers were released simply because their insureds were "completely" released, the precedential impact of this case would only serve to discourage settlement in cases where some, but not all, of the defendant insurers wanted to compromise and settle the plaintiff's claims against them.

Finally, the movers urge as an alternative argument that since exoneration by settlement is not a "personal defense" under the Direct Action statute they should be granted summary judgment. Personal defenses are "personal" to the insured because they cannot be urged by the insurer to defeat a claim made under the Direct Action Statute. *See* La.Rev.Stat.Ann. § 22:655 (West 1978 & Supp.1990). Generally they involve such things as bankruptcy, interdiction, infancy, and the like. The Court finds no merit in this argument for the reasons stated above. It is simply another way of stating the movers' contention that they should be released because the insureds have been released.

Accordingly,

IT IS ORDERED that the motion of defendants U.S. Fire and International Insurance for summary judgment is DENIED.